UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
NILDA SUAREZ CASTANEDA and MARIA  :
CALLE ALVARADO, on behalf of themselves and:
others similarly situated,                                  :
       Plaintiffs, :
           :
    -against-   :
           :
F&R CLEANING SERVICES CORP., ROBERT  :
MELINA, JESUS VAZQUEZ, and FRANTZ  :
SCUTT,        :
           :
       Defendants.
------------------------------------------------------------- x

**REPORT AND
RECOMMENDATION**

17-cv-7603 (SJ)(PK)

**Peggy Kuo, United States Magistrate Judge:**

Plaintiffs Nilda Suarez Castaneda ("Suarez Castaneda") and Maria Calle Alvarado ("Calle Alvarado") (collectively, "Plaintiffs") brought this Motion for Default Judgment ("Motion")[1] against Defendants F&R Cleaning Services Corp. ("Corporate Defendant" or "F&R Cleaning"), Robert Melina ("Melina"), Jesus Vazquez ("Vazquez"), and Frantz Scutt ("Scutt"), seeking damages under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 650 *et seq.* (*See* Motion, Dkt. 25; *see also* Am. Compl., Dkt. 8.) Suarez Castaneda also brought this Motion seeking damages for discrimination on the basis of sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, and New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 296, *et seq.*, as well as discrimination on the basis of gender in violation of the N.Y.C. Admin. Code §§ 8-107 *et seq.* ("NYCHRL"). (*Id.*)

---

[1] Plaintiffs filed a Motion for Default Judgment with supporting documents (Dkts. 23, 24) and an Amended Motion for Default Judgment with supporting documents (Dkts. 25, 26) on the same day. These filings are identical, except that the Amended Motion for Default Judgment attaches an affidavit including Suarez Castaneda's signature. (Dkt. 26-5 at 8.) This Report and Recommendation refers to the Amended Motion for Default Judgment (Dkt. 25) as "the Motion."

The Honorable Judge Sterling Johnson has referred the Motion to the undersigned for a Report and Recommendation.  (*See* August 9, 2018 Order.)  For the reasons stated herein, the undersigned respectfully recommends that the Motion be granted in part and denied in part.

## FACTUAL BACKGROUND

The following facts are taken from the Amended Complaint and evidence presented at the Motion Hearing and Inquest ("Hearing").[2]  Corporate Defendant is a New York corporation that provides cleaning services, with its principal place of business at 213 Taaffe Place, Suite 110, Brooklyn, NY 11205.  (Am. Compl. ¶ 11.)  Melina, Vazquez, and Scutt ("Individual Defendants" and collectively with Corporate Defendant, "Defendants") are owners or operators of Corporate Defendant.  (*Id.* ¶¶ 16, 19, 22.)  Individual Defendants were in charge of "all areas of the cleaning service, including the hiring and termination of workers, determining the rates of pay, work schedule (including work hours and work days), type of work assigned, designated work load and employment policy" at Corporate Defendant.  (*Id.* ¶¶ 16, 19, 22.)  Melina (known as "Boss" to Plaintiffs) and Vazquez (known as "Manager" to Plaintiffs), regularly texted Plaintiffs their assignments and disciplined them if they failed to meet the requirements of the services provided. (*Id.* ¶¶ 16-17, 19-20.)

Plaintiffs worked for Defendants as cleaning aides.  (Am. Compl. ¶ 33, 83.)  Suarez Castaneda was employed by Defendants from August 28, 2016 to November 30, 2016, and again from October 23, 2017 to November 27, 2017, and Calle Alvarado, from September 29, 2016 to

---

[2] To the extent that Plaintiffs' testimony during the Hearing differs from the facts alleged in the Amended Complaint and the Motion, the undersigned credits their testimony.  *See, e.g., Cortez v. 8612 Best Coffee Shop Inc.,* 13 CV 3095 (RRM) (RML), 2015 WL 10709830, n. 7, *R&R adopted,* 2016 WL 1559148 (2016) (granting a motion for default judgment and relying on the plaintiff's testimony where it "slightly" differed from the complaint and sworn declaration).  When their testimony supports an amount of damages that exceeds the damages requested in the Amended Complaint, however, the undersigned recommends using the damages alleged in the Amended Complaint because a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).

September 6, 2017.  (Am. Compl. ¶ 83; Hearing Transcript at 23, Dkt. 38 ("Tr."); *but see* Am. Compl. ¶ 33 (indicating that Suarez Castaneda started working on August 1, 2016).) [3]  Each morning, Defendants texted Plaintiffs indicating the apartment to be cleaned and whether a "regular" or a "deep cleaning" should be performed.  (Am. Compl. ¶ 38, 88.)  Plaintiffs' work schedule was from 9:00 a.m. to 4:00 or 5:00 p.m., and they worked an average of 7.5 hours for 6 days a week, amounting to 45 hours each week.  (Am. Compl. ¶¶ 34, 84.)  Plaintiffs were paid $35 for each "regular cleaning" and $70 for each "deep cleaning."[4]  (*Id.* ¶ 45, 89.)  They completed approximately 6 to 7 "regular cleanings" and 2 "deep cleanings" each week, for a total of 9 cleanings per week.[5]  (*Id.* ¶¶ 48-49, 92-93; Tr. at 11, 53.)  On "two or three occasions," Suarez Castaneda worked more than 7.5 hours, from 8:30 or 9:00 a.m. to 8:00 p.m.  (Tr. at 27; *see also* Am. Compl. 134-136.)  Plaintiffs were paid the same rate for regular time and overtime.  (Am. Compl. ¶¶ 53, 97.)

Calle Alvarado was not paid at all for the work performed between August 14, 2017 and September 6, 2017.[6]  (Am. Compl. ¶ 90; Tr. at 17.)  Plaintiffs also incurred out-of-pocket expenses for purchasing cleaning supplies; they were promised but never received reimbursement.  (Am. Compl. ¶ 55; 147-155.)  Although Plaintiffs received cash tips on a few occasions, customers often

---

[3] Suarez Castaneda testified that she started working on the "28th or 29th of August," and that she "started on a weekend, which was August 28th or 29th."  (Tr. at 23.)  Because August 28, 2016 was a Sunday, the undersigned takes that date as the starting point for her employment.

[4] Suarez Castaneda testified that when she began working with Defendants in 2017, she was promised $75 for each "deep cleaning."  (Tr. at 30; *see also* Suarez Castaneda Decl. ¶ 11, Dkt. 26-5.)

[5] The Amended Complaint alleges that Plaintiffs completed around 9-10 regular cleanings and 2 deep cleanings per week, for a total of 12 cleanings per week.  However, Calle Alvarado testified that she completed 6 to 7 "regular cleanings" and 2 "deep cleanings" per week (Tr. at 11) and damages calculations submitted by Plaintiffs were limited to these amounts (Tr. at 53, *see also* Dkt. 26-4).

[6] The Amended Complaint also indicates that Calle Alvarado was not paid for the work performed between March 20, 2017 and March 25, 2017.  (Am. Compl. ¶ 91.)  However, during the Hearing, Calle Alvarado testified that the dates between August 14, 2017 and September 6, 2017 "are the ones that [Defendants] didn't pay . . . ."  (Tr. at 17.)  She did not mention any other dates, and counsel's calculations only include August 14, 2017 through September 6, 2017 as unpaid weeks.  (Dkt. 26-4.)

paid tips by credit card and Plaintiffs never received those tips.  (*Id.* ¶¶ 56-58; 99-101.).  Defendants also failed to provide Plaintiffs with written pay rate notices and wage payment statements.  (*Id.* ¶ 29, 166-169, 171-174.)

With regard to Suarez Castaneda's discrimination claims, soon after she began working for Defendants, Vazquez's wife asked Suarez Castaneda "whether she had a boyfriend."  (*Id.* at ¶ 61.) Vazquez later texted her asking the same question.  (*Id.* ¶ 62; Tr. at 44.)  Moreover, during the first month of Suarez Castaneda's employment,[7] Vazquez texted Suarez Castaneda asking for a picture of her.  (Am. Compl. ¶ 69; Tr. at 44-45.)  Suarez Castaneda sent him a "normal picture" of herself "wearing proper clothes," but he asked for a "sexier picture."  (Am. Compl. ¶¶ 70-71; Tr. at 44-45.) On a different occasion, when Suarez Castaneda asked for a few days off to move to a new home, Vazquez asked her whether she was going to "invite [him] to [her] house."  (Tr. at 45; Am. Compl. ¶ 73-75.)  Suarez Castaneda responded that she could not invite him because it would be inappropriate.  (Tr. at 45.)

After these exchanges, Vazquez started assigning Suarez Castaneda to clean apartments farther away than those assigned on previous occasions or to "really dirty" apartments.  (Tr. at 45-46; Am. Compl. ¶¶ 63, 77.)  Defendant Vazquez gave her fewer and fewer apartments and, eventually, told her that there was no more work for her.  (Am. Compl. ¶ 78; Tr. at 46-47.)  As a result, Suarez Castaneda left F&R Cleaning in November 2016.  (Am. Compl. ¶ 78; Tr. at 46.) Suarez Castaneda returned to work with Defendants in 2017.  (Am. Compl. ¶ 33, 81.)  Soon thereafter, Defendant Vazquez asked her to refer a "female friend or a single woman" to work at Corporate Defendant.  (Am. Compl. ¶81; Tr. at 50-51.)  When she recommended a married friend,

---

[7] Although the Amended Complaint indicates that this event occurred around October 24, 2016 (Am. Compl. ¶ 67), Suarez Castaneda testified that it occurred "during the first month when [she] started" working for F&R Cleaning, i.e. August or September 2016 (Tr. at 45).

Vazquez responded that he did not want married women to work at Corporate Defendant.  (Am. Compl. ¶ 82; Tr. at 50.)

## PROCEDURAL BACKGROUND

On January 9, 2018, Plaintiffs filed this action as a putative FLSA collective and NYLL class action against Defendants.  (*See* Compl. ¶¶ 69-78, Dkt. 1.)  On January 26, 2018, Suarez Castaneda filed a charge against Corporate Defendant with the Equal Employment Opportunity Commission ("EEOC") based on Defendant Vazquez's conduct. (Dkt. 8-8.)  On February 19, 2018, Plaintiffs filed the Amended Complaint, adding Suarez Castaneda's claims for discrimination.  A copy of the Amended Complaint and Summons was served on all Defendants between March 15, 2018 and April 6, 2018.  (*See* Dkts. 11, 12, 13, 15, 20.)  On March 22, 2018, the EEOC issued a Notice of Right to Sue.  (Dkt. 14.)

Defendants failed to appear or otherwise respond to the Amended Complaint.  Plaintiffs requested, and the Clerk of Court entered, Certificates of Default against all Defendants.  (*See* Dkt. 21; May 23, 2018 Entry of Default, Dkt. 22.)  On August 6, 2018, Plaintiffs moved for default judgment seeking unpaid minimum and overtime wages, illegally retained credit card tips, out-of-pocket costs for cleaning supplies, spread-of-hours compensation, liquidated damages, statutory damages for wage notice and statement violations, pre- and post-judgment interest, and attorneys' fees and costs. (John Troy Decl. ¶ 1, Dkt. 26.)  Suarez Castaneda also seeks compensatory and punitive damages for discrimination under Title VII, NYSHRL, and NYCHRL.  (*Id.* ¶2.)

A Motion Hearing and Inquest was held on November 9, 2018, at which Plaintiffs testified under oath.  (*See* Nov. 14, 2018 Min. Entry.)

**DISCUSSION**

### I.  Default Judgment Standard

Rule 55 of the Federal Rules of Civil Procedure prescribes a two-step process for entry of a default judgment.  *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011). First, the Clerk of the Court must enter the party's default when the party has failed to answer or otherwise defend and "that failure is shown by affidavit or otherwise."  Fed. R. Civ. P. 55(a).  Then, the moving party must apply to the court for a default judgment.  Fed. R. Civ. P. 55(b)(2).

A default "constitutes admission of all well-pleaded factual allegations in the complaint." *United States v. Myers*, 236 F. Supp. 3d 702, 706 (E.D.N.Y. 2017).  However, "just because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right."  *GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010).  The Court must ensure that (1) jurisdictional requirements are satisfied, *see Mickalis Pawn Shop, LLC*, 645 F.3d at 125-26, 133; (2) plaintiff took all the required procedural steps in moving for default judgment, Local Civ. R. 55.2(c); and (3) Plaintiff's allegations, when accepted as true, establish liability as a matter of law.  *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  The court exercises significant discretion in deciding whether to grant a default judgment, including whether the grounds for default are clearly established.  *See GuideOne Specialty Mut. Ins. Co.*, 696 F. Supp. 2d at 208 (internal citations omitted); *see also Mickalis Pawn Shop*, 656 F.3d at 129.

Although a party's default is deemed to be an admission of all well-pleaded allegations as to liability, "it is not considered an admission of damages."  *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 155 (2d Cir. 1992).  Plaintiff's allegations as to damages are not deemed true, and courts have "an obligation to ensure that damages are appropriate."  *Stark Carpet Corp. v. Stark Carpet & Flooring Installations, Corp.*, 954 F. Supp. 2d 145, 151 (E.D.N.Y. June 20, 2013) (quoting *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir.1997)).

## II.     Jurisdictional and Procedural Requirements

This Court has original subject matter jurisdiction over this action because it arises under the FLSA and Title VII, which are federal statutes. *See* 28 U.S.C. § 1331. It also has supplemental jurisdiction over the related NYLL, NYSHRL, and NYCHRL claims. *See* 28 U.S.C. § 1367.

The Court has general jurisdiction over Corporate Defendant, because it is a New York corporation with a principal place of business in Brooklyn. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Personal jurisdiction over a New York corporation is established once it is validly served in this district. *See* Fed. R. Civ. P. 4(k)(1)(A). A corporation may be served by "following state law for serving a summons." Fed. R. Civ. P. 4(h)(1)(A). Service upon Corporate Defendant was made via the New York Secretary of State (Dkt. 20), which is a method of service authorized by New York state law. *See* N.Y. C.P.L.R. § 311(a)(1); N. Y. Bus. Corp. Law § 306(b)(1).

Because Individual Defendants transacted business within the state as owners or operators of Corporate Defendant, and because Plaintiffs' claims arise from those business transactions, they are subject to the Court's specific jurisdiction under New York's long-arm statute. N.Y. C.P.L.R. § 302(a); *see also Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 60 (2d Cir. 2012). Each Individual Defendant was also properly served. Where personal service cannot be made with due diligence, service upon an individual can be made "by affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode within the state of the person to be served" and by mailing them to the last known residence or actual place of business. N.Y. C.P.L.R. § 308(4); *see also* Fed. R. Civ. P. 4(e)(1). Acting with due diligence, the process server was unable to find Vazquez, Melina, and Scutt and they were served by use of the "nail and mail" method of service. (*See* Dkts. 11, 12, 15, 17, 18, 19.)

Plaintiffs have also demonstrated that they have taken the required steps under the Local Rules by requesting and obtaining a Certificate of Default (Dkt. 21; Entry of Default), making an

application to the Court for a default judgment (Dkts. 25, 26, 27), and filing proof that the motion

papers were mailed to Defendants (Dkts. 28, 29, 30, 31).  *See* Local Civ. R. 55.2.

### III.  FLSA Claims

   a.  <u>Liability</u>

      i.  <u>Employment Relationship Under the FLSA</u>

To plead a cause of action under the FLSA, Plaintiffs must establish that: (1) defendant is an

employer subject to the FLSA; (2) plaintiff is an employee within the meaning of the FLSA; and (3)

the employment relationship is not exempted from the FLSA.  *See Saucedo v. On the Spot Audio Corp.*,

No. 16-CV-00451 (CBA) (CLP), 2016 WL 8376837, at *4 (E.D.N.Y. Dec. 21, 2016), *R&R adopted*,

2017 WL 780799 (E.D.N.Y. Feb. 28, 2017); *see also* 29 U.S.C. §§ 203, 213.

The FLSA broadly describes an employer as "any person [or corporation] acting directly or

indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and does

not define the term "'employer' in the first instance." *Irizarry v. Catsimatidis,* 722 F.3d 99, 103 (2d

Cir. 2013).  A defendant is an FLSA employer if it meets the criteria for either enterprise or

individual coverage.  *See Saucedo*, 2016 WL 8376837, at *4.  The enterprise coverage test considers

whether the employer

> has employees engaged in commerce or in the production of goods for
> commerce, or [ ] has employees handling, selling, or otherwise working
> on goods or materials that have been moved in or produced for
> commerce by any person; and . . . whose annual gross volume of sales
> made or business done is not less than $500,000.

29 U.S.C. § 203(s)(1)(A)(i-ii); *see also Fermin v. Las Delicias Peruanas Rest. Inc.,* 93 F. Supp. 3d 19, 33

(E.D.N.Y. 2015).  The individual coverage test takes into account the "employment actions of each"

plaintiff to determine whether "the employees themselves are 'engaged in commerce.'" *Saucedo,*

2016 WL 8376837, at *4.  "Commerce" is "trade, commerce, transportation, transmission, or

communication among the several States or between any State and any place outside thereof."  29

U.S.C. § 203(b).  Even local activities may meet this if "an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce." *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 121 (E.D.N.Y. 2011) (quoting *Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 530 (S.D.N.Y. 1998)).

Plaintiffs allege that, during the relevant period, Corporate Defendant "purchased and handled goods moved in interstate commerce" and had gross sales in excess of $500,000 per year. (Am. Compl. ¶¶ 12, 13.)  Generally, allegations describing statutory definitions may not be sufficient to infer a nexus to interstate commerce without further proof.  However, in the context of default, the Court may accept these uncontested allegations as true and make reasonable inferences.  *See, e.g., Almighty Cleaning, Inc.*, 784 F. Supp. 2d at 121; *but see Jones v. E. Brooklyn Sec. Servs. Corp.*, No. 11-CV-1021 (SMG), 2012 WL 909830, at *2 (E.D.N.Y. Feb. 28, 2012), *R&R adopted*, 2012 WL 909825 (E.D.N.Y. Mar. 16, 2012).

Here, it is reasonable to infer that Defendants engaged in interstate commerce by handling and otherwise working with cleaning supplies that have been moved from or produced in other states.  Courts have reached the same conclusion in other cases involving cleaning supplies.  *See, e.g., Nikolaeva v. Home Attendant Services of Hyde Park*, 15-cv-6977 (NGG) (RER), 2017 WL 3491964 (E.D.N.Y. Jul. 19, 2017), *R&R adopted,* 2017 WL 3493136 (E.D.N.Y. Aug. 14, 2017); *Almighty Cleaning, Inc.*, 784 F. Supp. 2d at 121 (collecting cases); *Locke v. St. Augustine's Episcopal Church*, 690 F. Supp. 2d 77, 88 (E.D.N.Y. March 3, 2010).

The undersigned finds Plaintiffs' allegations sufficient to establish Defendants' employer status for the purposes of Plaintiffs' Motion.  *See Fermin*, 93 F. Supp. 3d at 33.  Moreover, Defendants may be held jointly and severally liable for FLSA violations because the Individual Defendants are owners or operators of Corporate Defendant.  *Mahoney v. Amekk Corp.*, No. 14-CV-

4131 (ENV) (VMS), 2016 WL 6585810, at *9 (E.D.N.Y. Sept. 30, 2016), *R&R adopted*, 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016).

An "employee," under the FLSA, is likewise broadly defined as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). The statute protects "employee[s] who in any workweek [are] engaged in commerce or in the production of goods for commerce" and those persons who are "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206(a). Plaintiffs allege that they were employed by Defendants as cleaning aides. (Am. Compl. ¶¶ 33, 83.) Accepting these allegations as true, the undersigned finds that Plaintiffs fall within the FLSA's definition of "employee."

The undersigned also finds that there was an employer-employee relationship between Plaintiffs and Individual Defendants under the Second Circuit's "economic reality" test, which determines "whether workers are employees and [ ] whether managers or owners are employers." *Irizarry*, 722 F.3d at 104. The economic reality test considers whether the alleged employer: "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984) (citation omitted). The Court must consider the "totality of the circumstances" and no one factor is dispositive. *Irizarry*, 722 F.3d at 110. The "ultimate question" is whether "the worker depends upon someone else's business for the opportunity to render service or is in business for himself." *Saucedo*, 2016 WL 8376837, at *5 (quoting *Velu v. Velocity Exp., Inc.*, 666 F. Supp. 2d 300, 306 (E.D.N.Y. 2006)) (internal quotation marks omitted). Moreover, individuals who exercise "operational control over employees" can be held liable, "if [their] role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment." *Irizarry*, 722 F.3d at 110.

Plaintiffs allege that Individual Defendants are owners or operators of Corporate Defendant who were in charge of "all areas of the cleaning service, including the hiring and termination of workers, determining the rates of pay, work schedule (including work hours and work days), type of work assigned, designated work load and employment policy." (Am. Compl. ¶¶ 16, 19, 22.) Additionally, they allege that Melina and Vazquez texted Plaintiffs their assignments and disciplined them if they failed to meet the requirements of the services provided. (*Id.* ¶¶ 17, 20.) Accepting Plaintiffs' allegations as true, the undersigned finds that Individual Defendants were Plaintiffs' employers.

Finally, Plaintiffs must show that they are not exempt from the FLSA's protections. *Fermin*, 93 F. Supp. 3d at 32. The FLSA "contains a litany of exemptions," *id.* (internal quotation marks and citations omitted)*,* but they do not include functions such as cleaning aides. *See also* 29 U.S.C. § 213. Accordingly, the undersigned finds that Plaintiffs are non-exempt employees under the FLSA.

Plaintiffs have shown that the FLSA applies here.

ii.   Employment Relationship Under the NYLL

To prevail in an NYLL claim, Plaintiffs must establish that their employment relationship with Defendants falls within the NYLL, which applies to "any person employed for hire by an employer in any employment." N.Y. Lab. L. § 190. Under the NYLL, employers are not required to "achieve a certain minimum in annual sales or business in order to be subject to the law," and may be held jointly and severally liable for violations. *Saucedo,* 2016 WL 8376837, at *6. Otherwise, the NYLL's definition of "employer" is "nearly identical" to that of the FLSA, and the analysis of the employment relationship under both statutes is based on the same factors. *See Mahoney*, 2016 WL 6585810, at *9 (collecting cases holding that the FLSA and NYLL are interpreted consistently with one another on the question of employer status). Because the parties had an employer-

employee relationship under the FLSA, they also had an employer-employee relationship under the NYLL.

Plaintiffs have shown that the NYLL applies.

### iii. Statute of Limitations

Under the FLSA, the statute of limitations is two years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C § 255(a). The three-year statute of limitations period applies here because Defendants' default itself establishes willfulness. *Herrera v. Tri-State Kitchen & Bath, Inc.*, No. 14-CV-1695 (ARR) (MDG), 2015 WL 1529653, at *6 (E.D.N.Y. Mar. 31, 2015). The statute of limitations for an FLSA plaintiff runs from "the date when the complaint is filed if he is specifically named as a party plaintiff in the complaint." *Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314 (SJ) (RER), 2015 WL 5561033, at *6 (E.D.N.Y. Sept. 1, 2015), *R&R adopted*, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015). Plaintiffs filed the Complaint on January 9, 2018. (Dkt. 1.) Therefore, they may recover for FLSA violations that occurred on or after January 9, 2015.

Under the NYLL, the statute of limitations is six years. *See* N.Y. Lab. Law §§ 198(3), 663(3). Plaintiffs may recover for NYLL violations that occurred on or after January 9, 2012.

### b. Plaintiffs' Particular Claims and Damages

Plaintiffs seek compensation for unpaid minimum and overtime wages, illegally retained credit card tips, spread-of-hours compensation, statutory damages for wage notice and statement violations, liquidated damages, pre-judgment interest, and attorneys' fees and costs under the FLSA and NYLL. Defendants are jointly and severally liable under the FLSA and NYLL for any damages award in favor of Plaintiffs.

i.   <u>Minimum and Overtime Wages</u>

An employer who fails to meet its minimum wage obligation is liable to its employees under both the FLSA and NYLL.  *See* 29 U.S.C. §§ 206(a), 216(b); N.Y. Lab. Law § 652; *see also* N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.1.  The burden is on the plaintiff to show that he or she "was not properly compensated for the work performed," but "it is the employer's responsibility to maintain accurate records of an employee's hours."  *Padilla v. Manlapaz*, 643 F. Supp. 2d 302, 307 (E.D.N.Y. 2009) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)); *see* N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.6.  When such records do not exist, a plaintiff can meet his or her burden "through [his or her] own recollection."  *Padilla*, 643 F. Supp. 2d at 307 (citation omitted).

Moreover, under both statutes, an employee must "be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week."  *Nakahata v. New York-Presbyterian Health Care Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (citing 29 U.S.C. § 207(a)); *see also* N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.2 (incorporating the FLSA definition of overtime into the NYLL).  To support "a reasonable inference" that he or she worked more than forty hours in a given week, *Nakahata*, 723 F.3d at 201, a plaintiff must sufficiently allege some uncompensated time in excess of the 40 hours of work in a given workweek, *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013), and provide "sufficient detail about the length and frequency" of the unpaid work, *Nakahata*, 723 F.3d at 201.  *See also Fermin*, 93 F. Supp. 3d at 44-45 (finding allegations that plaintiff worked over forty hours a week established an overtime claim).  Defendants are liable to Plaintiffs for minimum and overtime wage rates that are calculated based on the employee's regular rate of pay or the applicable minimum wage rate, whichever is greater.  *See* 29 U.S.C. § 207; 29 C.F.R. § 778.102; N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.2; *see also Montellano-Espana v. Cooking Light Inc.*, No. 14-CV-01433 (SJ) (RLM), 2016 WL 4147143, at *4 (E.D.N.Y. Aug. 4, 2016).

13

When, like here, an employee works at two or more different rates of pay (which are greater than the applicable minimum wage rate), the "regular rate" is the weighted average of those rates. 29 C.F.R. § 778.115; *see also Gorman v. Consolidated Edison Corp.*, 488 F.3d. 586, 596 (2nd Cir. 2007) (quoting 29 C.F.R. § 778.115). The weighted average is "properly calculated by adding all of the wages payable for the hours worked at the applicable shift rates and dividing by the total number of hours worked." *Gorman,* 488 F.3d. at 596; *see also Estrella v. P.R. Painting Corp.*, 06-CV-717 (ADS) (AKT), 2007 WL 9709943, at *6 (E.D.N.Y. Apr. 21, 2007); *Brown v. Tomcat Electrical Security, Inc.*, No. 03-cv-5175 (TLM), 2010 WL 11603139, at *2 (E.D.N.Y. May 14, 2010).

### 1.   Suarez Castaneda

From August 28, 2016 to November 30, 2016 ("2016 Period"), Suarez Castaneda was paid $385 weekly (Dkt. 26-4) and worked 45 hours each week (Am. Compl. ¶ 34; Tr. at 26). Her actual hourly rate (determined by dividing the weekly rate by the number of hours worked) was $8.55. From October 23, 2017 to November 27, 2017 ("2017 Period"), her weekly pay varied from week to week, but her hours worked remained the same, so her actual hourly rate ranged from $7 to $10.11, as indicated on Chart 1. (*See* Dkt. 26-4.) The higher rate for the 2016 Period was the NYLL minimum wage of $9 per hour. The higher rate for the 2017 Period was the NYLL minimum wage of $10.50 per hour. The NYLL rates used are those applicable to small employers because Plaintiffs failed to provide information about the size of Defendants' workforce. *See, e.g., Reyes v. Lincoln Deli Grocery Corp.*, No. 17-CV-2732 (KBF), 2018 WL 2722455, at *7 (S.D.N.Y. June 5, 2018). Suarez Castaneda is entitled to one and one-half times those rates for 5 overtime hours per week, as follows: $13.50 per hour for the 2016 Period, and $15.75 for the 2017 Period.

During the 2016 Period, Suarez Castaneda worked a total of 13 weeks.  During the 2017

Period, Suarez Castaneda provided specific dates on which she worked and how much she was

paid.[8]  (Dkt. 26-4.)

Based on these calculations, Suarez Castaneda is owed minimum and overtime wages for the

amounts described in the following chart:

| Chart 1: Suarez Castaneda's Minimum Wage and Overtime Calculations | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Work Period | Hours Worked Each Week | Actual Hourly Rate | NYLL Minimum Wage | Weekly Minimum Wage Entitled[9] | Weekly Overtime Wage Entitled[10] | Total Weekly Amount Entitled | Weekly Amount Paid | Total Shortfall Per Week[11] |
| **2016 Period** | 08/28/2016 to 11/30/2016 | 45 | $8.55 | $9 | $360 | $67.50 | $427.50 | $385 | $42.50 x 13 weeks = **$552.50** |
| **2017 Period** | 10/23/2017 to 10/28/2017 | 45 | $10.11 | $10.50 | $420 | $78.75 | $498.75 | $455 | **$43.75** |
| | 10/31/2017 to 11/3/2017 | 45 | $7.77 | $10.50 | $420 | $78.75 | $498.75 | $350 | **$148.75** |
| | 11/6/2017 to 11/11/2017 | 45 | $9.33 | $10.50 | $420 | $78.75 | $498.75 | $420 | **$78.75** |
| | 11/13/2017 to 11/18/2017 | 45 | $7 | $10.50 | $420 | $78.75 | $498.75 | $315 | **$183.75** |
| | 11/19/2017 to 11/27/2017 | 45 | $8.55 | $10.50 | $420 | $78.75 | $498.75 | $385 | **$113.75** |
| | | | | | | | | | **$1,121.25** |

---

[8] The Amended Complaint alleges that Suarez Castaneda "was not paid at all from November 6, 2016 to November 30, 2016" and that she was only paid for two weeks of her work during the 2017 Period ($367 on October 28, 2017, and $300 on November 17, 2017).  (Am. Compl. ¶¶ 40, 42-43.)  However, during the Hearing, it was established that she was paid for both the 2016 and the 2017 periods.  (*See* Tr. at 30, 49, 55.)

[9] NYLL minimum wage x 40 hours = weekly minimum wage entitled

[10] NYLL minimum wage x 1.5 x 5 = weekly overtime wage entitled

[11] Total weekly amount entitled – weekly amount paid = total shortfall per week

Accordingly, the undersigned recommends that Suarez Castaneda be awarded **$1,121.25 for unpaid minimum and overtime wages**.

### 2. Calle Alvarado

During her employment with Defendants, Calle Alvarado was paid $385 and worked 45 hours each week. Her actual hourly rate (determined by dividing the weekly rate by the number of hours worked) was $8.55. (*See* Chart 2.) Because the NYLL minimum wage rate increased on December 31, 2016, Calle Alvarado's calculations are divided into two periods. The higher rate for the weeks worked from September 29, 2016 to December 30, 2016 ("2016 Period") was the NYLL minimum wage of $9 per hour. The higher rate for weeks worked from December 31, 2016 to September 6, 2017 ("2017 Period") was the NYLL minimum wage of $10.50 per hour. Calle Alvarado is entitled to one and one-half times those rates for 5 hours per week, as follows: $13.50 per hour for weeks worked during the 2016 Period, and $15.75 for the weeks worked during the 2017 Period.

Calle Alvarado was not paid at all for work performed between August 14, 2017 and September 6, 2017. Each week, she was entitled to a minimum wage of $420 for 40 hours at a rate of $10.50 per hour, and overtime wages of $78.75 for 5 hours at a rate of $15.75 per hour, for a total of $498.75 each week. Accordingly, the undersigned recommends that Calle Alvarado be awarded $1,496.25 for the three weeks that she was not paid at all.

Based on these calculations, Calle Alvarado is owed unpaid minimum and overtime wages in the amounts described in the following chart:

| | Work Period | Hours Worked Each Week | Actual Hourly Rate | NYLL Minimum Wage | Weekly Minimum Wage Entitled[12] | Weekly Overtime Wage Entitled[13] | Total Weekly Amount Entitled | Weekly Amount Paid | Total Shortfall Per Week[14] |
|---|---|---|---|---|---|---|---|---|---|
| | Chart 2: Calle Alvarado's Minimum Wage and Overtime Calculations | | | | | | | | |
| **2016 Period** | 9/29/2016 to 12/30/2016 (13 weeks) | 45 | $8.55 | $9 | $360 | $67.50 | $427.50 | $385 | $42.50 x 13 weeks = **$552.50** |
| **2017 Period** | 12/31/2016 to 8/13/2017 (32 weeks) | 45 | $8.55 | $10.50 | $420 | $78.75 | $498.75 | $385 | **$113.75 x 32 weeks= $3,640** |
| | 8/14/2017 to 9/6/2017 (3 weeks) | 45 | --------- | $10.50 | $420 | $78.75 | $498.75 | $0 | **$498.75 x 3 weeks = $1,496.25** |
| | | | | | | | | | **$5,688.75** |

Accordingly, the undersigned recommends that Calle Alvarado be awarded **$5,688.75 for unpaid minimum and overtime wages.**

ii.   Illegally Retained Tips

Under the NYLL, an employee can bring a claim for illegally retained tips.  N.Y. Lab. Law §§ 196-d; *see also Azeez v. Ramaiah*, 14 Civ. 5623 (PAE), 2015 WL 1637871 (S.D.N.Y. 2015).  Section 196-d of the NYLL provides that "[n]o employer . . . shall . . . retain any part of a gratuity or of any charge purported to be a gratuity for an employee." N.Y. Lab. Law § 196-d.

Both Suarez Castaneda and Calle Alvarado allege that roughly 60% of Defendants' customers pay tips through credit card, which ranged from $10 to $30, averaging $20 for each service.  (Am. Compl. ¶¶ 56-57; 99-100; *see also* Suarez Castaneda Decl. ¶ 17, Dkt. 26-5; Calle

---

[12] NYLL minimum wage x 40 hours = minimum wage to which she was entitled

[13] NYLL minimum wage x 1.5 by 5 = overtime wage to which she was entitled

[14] Total weekly amount entitled – weekly amount paid = total shortfall per week

Alvarado Decl. ¶12, Dkt. 26-6.)  Although a precise basis for these calculations was not provided, information about the exact amount of tips paid through credit cards is peculiarly within Defendants' knowledge, and Plaintiffs are entitled to "all reasonable inferences from the evidence it offers." *Almighty Cleaning, Inc.*, 784 F. Supp. 2d at 125.

Plaintiffs completed approximately 9 cleanings per week.  (Tr. at 11, 53; *see also* note 5 of this R. & R.)  If 60% of those customers paid tips through credit card, that comes out to 5 customers per week.  At an estimated $20 for each service, Plaintiffs are owed $100 per week for illegally retained tips.  Suarez Castaneda worked for 18 weeks, and is entitled to $1,800 for illegally retained tips, and Calle Alvarado worked for 48 weeks, and is entitled to $4,800 for illegally retained tips.

Accordingly, the undersigned recommends that **Suarez Castaneda be awarded $1,800 and Calle Alvarado $4,800 for illegally retained tips**.

### iii.  Spread-of-Hours Compensation

Under the NYLL, an employee is entitled to earn an additional hour of pay at the minimum wage for each day on which that employee works more than ten hours.  N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.4.  The spread-of-hours premium is determined by multiplying the minimum wage for the relevant period by the total number of days that the employee worked more than ten hours.  *Id.*  Employees are to be compensated at the applicable minimum wage regardless of their regular rate of pay.  *Id.*

Plaintiffs allege that Defendants failed to pay them spread-of-hour premiums.  (Compl. ¶ 136.)  During the hearing, Suarez Castaneda testified that she worked more than 10 hours, from 8:30 or 9:00 a.m. to 8:00 p.m., "on two or three occasions" during the 2016 Period of employment.  (Tr. at 26-27.)  Therefore, she was entitled to spread-of-hours pay for three days at the applicable NYLL minimum wage of $9 per hour, for a total of $27.  Calle Alvarado, however, indicated during the Hearing that she never worked for more than 10 hours a day.  (Tr. at 14.)

18

Accordingly, the undersigned recommends that **Suarez Castaneda be awarded $27 for unpaid spread-of-hours premium** and that **Calle Alvarado's request for spread-of-hours premium be denied**.

iv.    Wage Statement and Notice Violations

Plaintiffs allege violations of Sections 195(1) and 195(3) of the NYLL, the statute's wage notice and statement provisions.  Section 195(1) requires employers to provide employees at the time of hiring with a wage notice containing, *inter alia,* the rate of pay, the basis thereof, and pay schedule.  Violations of Section 195(1) carry damages of $50 per work day, for a maximum of $5,000.  N.Y. Lab. L. § 198(1-b).  Section 195(3) requires employers to provide employees with "a statement with every payment of wages," listing various information including the dates of work covered by the payment, information identifying the employer and employee, details regarding the rate of pay and the overtime rate of pay, and the number of hours worked.  Violations of Section 195(3) carry damages of $250 per work day, also for a maximum of $5,000.  *Id.* § 198(1-d).

The Amended Complaint contains the factual allegation that Suarez Castaneda did not receive the notice required by Section 195(1).  (Am. Compl. ¶¶ 29, 167-170.)  At the Hearing, Suarez Castaneda testified that, at the time she was hired, Vazquez gave her a "document" that she signed which "had all the law" and indicated "the rules" of the work and "the hours."  (Tr. at 36-37.)  She further testified that such document described her rate of pay, was written in Spanish, her primary language, and she believes "there were about two or more [documents] in English."  (*Id.*)  While Suarez Castaneda received a document containing some of the requirements of Section 195(1) of the NYLL, there is no evidence that the document contained all the required information, such as "the regular pay day designated by the employer; the name of the employer; any 'doing business as' names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if  different; the telephone number of the employer."  N.Y. Lab. Law

19

§ 195(1)(a).  Accordingly, the undersigned finds that Suarez Castaneda adequately established a violation of Section 195(1).

The Amended Complaint also sufficiently alleges, and the Hearing testimony supports, that Calle Alvarado did not receive the notice required by Section 195(1).  (Am. Compl. ¶¶ 29, 167-170; Tr. at 16-17.)

Defendants also failed to provide both Plaintiffs with the required wage statements upon each payment of wages throughout the course of their employment.  (Am. Compl. ¶¶ 172-174.) Because both Plaintiffs worked for Defendants more than 100 days,[15] they are entitled to recover the maximum statutory damages of $5,000 under Section 195(1) and $5,000 under Section 195(3).

Accordingly, the undersigned recommends that each Plaintiff be awarded the **$10,000 in statutory damages** for wage statement and notice violations.

> v.    Liquidated Damages

Under both the FLSA and the NYLL, an employee may be entitled to recover liquidated damages.  29 U.S.C. § 216(b); N.Y. Lab. Law § 663.  If the employer shows that "the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of the FLSA or NYLL, the court may decide not to award liquidated damages.  29 U.S.C. § 260; N.Y. Lab. Law § 198(1-a).  Since Defendants failed to respond to the Motion, no good faith exists and liquidated damages are appropriate.  *See Herrera*, 2015 WL 1529653, at *12 (defaulting defendants did not show good faith).

The Second Circuit has interpreted the NYLL to preclude the award of double liquidated damages under both the NYLL and FLSA.  *See Chowdhury v. Hamza Express Food Corp.*, 666 Fed. Appx. 59, 61 (2d Cir. 2016) (summary disposition); *see also Leon v. Zita Chen*, No. 16-CV-480 (KAM)

---

[15] Suarez Castaneda worked for 95 days during 2016 and 36 days during 2017, for a total of 131 days.  Calle Alvarado worked for 343 days.

(PK), 2017 WL 1184149, at *9 (E.D.N.Y. Mar. 29, 2017) (following *Chowdhury*).  In light of the principle that "the law providing the greatest recovery will govern," *Charvac v. M & T Project Managers of New York, Inc.*, No. 12-CV-5637 (CBA) (RER), 2015 WL 5475531, at *4 (E.D.N.Y. June 17, 2015) (citation omitted), Plaintiffs may be awarded liquidated damages under the NYLL, which provides liquidated damages for spread of hours and unlawful tip retention, as well as the other wage violations covered by the FLSA.

Plaintiffs' claims arose after amendment of the NYLL in 2011, and they can recover "one hundred percent of the total amount of wages found to be due."  N.Y. Lab. Law § 198(1-a).  Thus, Plaintiffs are entitled to liquidated damages equal to 100% of wages due or **$2,948.25** for unpaid minimum and overtime wages, unlawful tip retention, and spread-of-hours premium for Suarez Castaneda, and **$10,488.75** for unpaid minimum and overtime wages and unlawful tip retention for Calle Alvarado.

The undersigned recommends an award of **$2,948.25 for Suarez Castaneda and $10,488.75 for Calle Alvarado in liquidated damages.**

      vi.   Pre-Judgment Interest

Plaintiffs seek "pre[-]judgment interest provided by NYLL."  (Motion at ¶1; Am. Compl. ¶2.)  Since "liquidated damages and pre-judgment interest are not functional equivalents under the NYLL, prevailing plaintiffs may recover both for claims brought under the NYLL."  *Saucedo*, 2016 WL 8376837, at *16 (citation omitted).  The statutory interest rate for pre-judgment interest is nine percent per annum.  N.Y. C.P.L.R. § 5004.  Courts have discretion in determining a reasonable date from which to award pre-judgment interest, such as the "the earliest ascertainable date the cause of action existed" or a midway point between when the plaintiff began and ended work if damages were incurred at various times.  *See Santillan v. Henao*, 822 F. Supp. 2d 284, 298 (E.D.N.Y. 2011).

Because Suarez Castaneda was denied wages over an extended period of time, the undersigned will use an intermediate date.  The midpoint between August 28, 2016 and November 27, 2017 is April 13, 2017 and there are 229 days between this midpoint and the end of her employment.  The undersigned multiplied $2,948.25 in compensatory damages by the 9% interest rate to get interest due of $265.34 per year.  That amount divided by 365 days in a year equal $0.73 in interest per day.  That amount multiplied by the 229 days between the midpoint of Suarez Castaneda's employment and the end of her employment equals $167.17.  Accordingly, the undersigned recommends that Suarez Castaneda be awarded **pre-judgment interest of $167.17, plus $0.73 per day between November 28, 2017 and the date of entry of judgment.**

For Calle Alvarado, the midpoint between September 29, 2016 and September 6, 2017 is March 19, 2017 and there are 172 days between this midpoint and the end of her employment.  The undersigned multiplied $10,488.75 in compensatory damages by the 9% interest rate to get interest due of $943.99 per year.  That amount divided by 365 days in a year equals $2.59 in interest per day.  That amount multiplied by the 172 days between the midpoint of Calle Alvarado's employment and the end of her employment equals a total interest of $445.48.  Accordingly, the undersigned recommends that Calle Alvarado be awarded **pre-judgment interest of $445.48, plus $2.59 per day between September 7, 2017 and the date of entry of judgment.**

## IV.    Post-Judgment Interest

Plaintiffs seek post-judgment interest, which "shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a); see, e.g., *Fermin*, 93 F. Supp. 3d at 53.  Accordingly, the undersigned respectfully recommends that **Plaintiffs be awarded post-judgment interest**, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.

## V.      Breach of Contract - Out-of-Pocket Costs for Cleaning Supplies

Plaintiffs seek to recover certain out-of-pocket costs for cleaning supplies.  They argue that an implied contract arose from Defendants' conduct because they did not request Plaintiffs to "cease the purchase of the supplies" and "in fact promised Plaintiffs prompt reimbursement."  (Am. Compl. ¶ 152.)

To prevail on a breach of contract claim under New York Law, a plaintiff must show "(1) the existence of a contract, (2) performance of the contract by one party, (3) breach by the other party, and (4) damages." *Soley v. Wasserman*, 823 F. Supp. 2d 221, 229-30 (S.D.N.Y. 2011); *see also Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004); *Klein v. Frenkel,* 14-cv-2719 (ADS)(AYS), 2017 WL 2371173, at *3 (E.D.N.Y. May 30, 2017).

As to whether or not a contract exists, New York Law recognizes both express and implied contracts.  *LPD New York, LLC v, Adidas America*, Inc., 15-CV-6360 (MKB), 2016 WL 11264718, at *11 (E.D.N.Y. Aug. 25, 2016), *R&R adopted*, 2017 WL 1162181 (E.D.N.Y. Mar. 27, 2017).  All contracts, either express or implied, require "consideration, mutual assent, legal capacity and legal subject matter." *Ancile Inv. Co. Ltd. v. Archer Daniels Midland Co.*, 784 F. Supp. 2d 296, 303 (S.D.N.Y. 2011) (quoting *Leibowitz v. Cornell University*, 584 F.3d 487, 507 (2d Cir. 2009) *superseded by statute on other grounds.*)

An express contract can be written or oral, and an oral contract "is formed when the parties agree to terms through what was said despite the absence of a written agreement." *Qiyuan Shi v. Gyamera*, 17-cv-2354 (RWL), 2018 WL 6920697, at *6 (S.D.N.Y. Dec. 6, 2018).  By contrast, an implied contract "may result as an inference from the facts and circumstances of the case, although not formally stated in words, and is derived from the presumed intention of the parties as indicated by their conduct." *Leibowitz* , 584 F.3d at 506-507.  An implied contract cannot be found where

"there is an express contract covering the subject-matter involved." *LPD New York, LLC*, 2016 WL 11264718, at *11.

Here, Plaintiffs purchased cleaning supplies for Defendants' customers at their own expense. (Am. Compl. ¶ 150.)  Defendants promised Plaintiffs that they would reimburse those costs.  (*Id.* ¶ 152.)  However, Plaintiffs were not paid for some of the supplies that they bought.  (*Id.* ¶ 154; Tr. at 13-14, 64-65.)

Plaintiffs have shown the existence of an oral contract; an agreement that was formed through "what was said."  *See Qiyuan Shi*, 2018 WL 6920697, at *6.  Although the Amended Complaint refers to an "implied contract," facts alleged in the Amended Complaint and Plaintiffs' testimony show that the parties orally agreed to the terms of the contract and, thus, the contract was express rather than implied.  *See LPD New York, LLC*, 2016 WL 11264718, at *11.  Both parties orally agreed to do something: Plaintiffs agreed to buy cleaning supplies for clients and Defendants agreed to reimburse them for the costs of those cleaning supplies.  Therefore, the agreement was mutual and for consideration.  The legal capacity of the parties to enter into such agreement has not been questioned and the purchase of cleaning supplies constitutes a legal subject matter.

Plaintiffs have established the other elements of a breach of contract as well.  Plaintiffs adequately performed the contract by buying the cleaning supplies for Defendants' customers (Am. Compl. ¶ 150), and Defendants breached the contract by failing to reimburse Plaintiffs for some of those costs (*Id.* ¶ 154).  (*See also* Tr. at 13-14, 64-65.)

As to damages, Calle Alvarado testified during the Hearing that Defendants reimbursed her for most of her costs, but not on two or three occasions.  (Tr. at 21.)  She indicated that she was owed around $10 or $20.  (*Id.*)  Suarez Castaneda submitted an exhibit showing four receipts (for $16.89, $14.82, $17.10, and $9.67, respectively) for the costs that she is owed.  (Hearing, Ex. 1.)  According to those receipts, Suarez Castaneda is owed a total of $58.48.  She further testified that

she is also owed between $80 and $100 for other purchases for which she does not have receipts. (Tr. at 68-69.) However, the Amended Complaint specifically mentioned the amounts shown in the receipts totaling $58.48 (Am. Compl. ¶ 55), and failed to include additional amounts. Therefore, Suarez Castaneda may only recover $58.48 for out-of-pocket costs for cleaning supplies. *See* Fed. R. Civ. P. 54(c) ("[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.").

Accordingly, the undersigned recommends that Plaintiffs' claim for breach of contract as to the cleaning supplies be granted. The undersigned recommends an award **of $20 for Calle Alvarado and $58.48 for Suarez Castaneda**.[16]

## VI. Suarez Castaneda's Discrimination Claims

Suarez Castaneda asserts claims for discrimination on the basis of sex in violation of Title VII and NYSHRL, as well as discrimination on the basis of gender in violation of NYCHRL.

Title VII defines the term "employer" as "a person engaged in an industry affecting commerce who has **fifteen or more employees** for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b) (emphasis supplied); *see also Arbaugh v. Y&H Corp.,* 546 U.S. 500, 514 (2006) (holding that "the threshold number of employees for application of Title VII is an element of a plaintiff's claim for relief. . . .") Therefore,

---

[16] Although Plaintiffs' counsel included calculations for out-of-pocket transportation costs in the damages chart submitted with the Motion (Dkt. 26-4), Count VIII of the Amended Complaint, which alleges breach of contract, only specifies costs and expenses of cleaning supplies. (Am. Compl. ¶¶ 146-155.) The Motion also presents no arguments to support transportation costs. In any event, during the Hearing, Calle Alvarado testified that Defendants "never" promised to pay her for their transportation costs and stated that she was supposed to pay for those costs herself. (Tr. at 22.) When questioned by the Court, counsel confirmed that Plaintiffs were not promised reimbursement for transportation costs. (Tr. at 60, 61.) Counsel has provided no explanation for the inclusion of transportation costs in the damages chart. Accordingly, to the extent that Plaintiffs' chart and allegations are construed as a request for out-of-pocket transportation costs, the undersigned recommends that it be denied.

an employer "is not covered by the provisions of Title VII, unless the employer has at least fifteen employees." *Arculeo v. On-Site Sales & Mktg.*, LLC, 425 F.3d 193, 195 (2d Cir. 2005); *see also Johnson v. Allick*, 18-CV-7171 (MKB), 2019 WL 569106, at *4 (E.D.N.Y. Feb. 12, 2019) (dismissing plaintiff's Title VII claim for failure to "allege any facts that suggest that [defendant] employed fifteen or more employees at any given time."); *see also Kuhnmuench v. Phenix Pierre, LLC,* No. 16-CV-9162 (LTS), 2018 WL 1357383, at *3 (S.D.N.Y. Mar. 15, 2018).

In addition, only employer-entities can be found liable under Title VII, which does not extend liability to individuals. *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1314 (2d Cir.1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *see also Johnson,* 2019 WL 569106, at *4.

Here, Suarez Castaneda has not alleged that Corporate Defendant employed fifteen or more employees at any time.  Consequently, she has failed to adequately plead a required element of a Title VII discrimination claim against Corporate Defendant.  Furthermore, Suarez Castaneda cannot bring Title VII claims against Defendants Melina, Vazquez, and Scutt since individuals cannot be held liable under Title VII.  *See Tomka,* 66 F.3d at 1314.

Accordingly, the undersigned recommends that Suarez Castaneda's request for a default judgment on the grounds of discrimination in violation of Title VII be **denied**.  *See, e.g., Young-Flynn v. Wright*, 05-Cv-1488, 2007 WL 241332, at *24 (S.D.N.Y., Jan. 26, 2007) (collecting cases) ("default judgment is inappropriate where a plaintiff has failed to state a cause of action. . . .").

Suarez Castaneda also asserts state and city law claims of discrimination under NYSHRL and NYCHRL.  In order to exercise supplemental jurisdiction over a state claim, the state and federal claims must "derive from a common nucleus of operative fact." *Shahriar v. Smith & Wollensky Restaurant Group*, 659 F.3d 234, 245 (2d Cir. 2011) (quoting *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir.2004)); *see also* 28 U.S.C. § 1367(a).  A court may decline to exercise

supplemental jurisdiction over a claim if it dismisses the claims "over which it has original jurisdiction."  28 U.S.C. § 1367(b)(3).

Suarez Castaneda's state and city law claims of discrimination shared a "common nucleus of operative fact" with her Title VII claim.  *Shahriar*, 659 F.3d at 245.  However, if the Court accepts the undersigned's recommendation that Suarez Castaneda's Title VII claim be dismissed, Suarez Castaneda's remaining federal wage and hour claims would not provide an independent source of supplemental jurisdiction for the state and local discrimination claims.  Claims for sexual harassment and discrimination "do not share a common nucleus of operative fact with [the plaintiff's] wage-related claims [because] [t]hey involve different rights, different interests, and different underlying facts than her wage-related claims."  *Morales v. Mw Bronx, Inc.,* 15-cv-6296, 2016 WL 4084159 (TPG), at *13 (S.D.N.Y. Aug. 1, 2016) (quoting *Hernandez v. Mauzone Home Kosher Products of Queens, Inc.,* 12-CV-2327 (SJ) (JMA), 2013 WL 5460196, at *2 (E.D.N.Y. Sept. 30, 2013)); *see also Rivera v. Ndola Pharmacy Corp.,* 497 F. Supp. 2d 381, 395 (E.D.N.Y. 2007).  The mere fact that the federal wage and hour claims and the state and city discrimination claims arise from the same employment relationship is insufficient to confer subject matter jurisdiction over the non-wage claims under state and city law.  *See Morales,* 2016 WL 4084159, at *14.

Accordingly, the undersigned recommends that the Court decline to exercise supplemental jurisdiction over the remaining state and city law claims of discrimination under NYSHRL and NYCHRL.

## VII.   Attorneys' Fees & Costs

### i.  *Hourly Rates*

Plaintiffs' counsel seeks reasonable attorneys' fees, which he is entitled to recover under both the FLSA and NYLL.  *See* 29 U.S.C. § 216(b); N.Y. Lab. Law. § 663(1).  District courts have broad discretion to determine the amount awarded, and the party requesting fees must provide

documentation to support its claims. *Mahoney*, 2016 WL 6585810, at *18. Courts calculate appropriate attorneys' fees by multiplying the number of hours reasonably spent by counsel on the matter by a reasonable hourly rate. *Saucedo*, 2016 WL 8376837, at *16. This "lodestar method" may be adjusted based on the circumstances of the case. *Id.*

A reasonable hourly rate is the rate a "reasonable, paying client would be willing to pay." *Id.* at *16-17. The Second Circuit and various district courts have identified case-specific variables relevant in setting a reasonable hourly rate, considering whether the rates requested are proportional to fees awarded to other attorneys performing similar services with comparable skill, expertise and reputation. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. Of Albany*, 522 F.3d 182, 190 (2d Cir. 2008); *Mahoney*, 2016 WL 6585810, at *19. In recent years, decisions in this District have determined reasonable hourly rates in FLSA cases at "approximately $300-$450 for partners, $200-$325 for senior associates, $100-$200 for junior associates, and $60-80 for legal support staff." *Id.* (internal quotation marks and citation omitted).

Plaintiffs request an hourly rate of $450 for attorney John Troy and $250 for attorney Aaron Schweitzer. Plaintiffs' counsel failed to provide a description of the qualifications of Troy or Schweitzer. This failure "could provide a basis to deny [P]laintiffs' application for an award of attorneys' fees, without prejudice to renewal upon a proper showing." *Disney Enters., Inc. v. Merchant*, No. 05–CV–1489, 2007 WL 1101110 (NAM), at *8 (N.D.N.Y. Apr. 10, 2007) (collecting cases). Nevertheless, the Court has discretion to consider the fee application if the missing information can be obtained from other sources. *See id.* A recent Report and Recommendation issued by the undersigned shows that Troy is the "principal" at Troy Law, PLLC ("Troy Law"), and has been practicing law since 1989 and handling wage-and-hour cases in this district for the last nine years. *Zhong Fa Qin v. Sensation Neo Shanghai Cuisine, Inc.*, 15-CV-6399 (KAM)(PK), 2018 WL 5456653, at *9 (E.D.N.Y. Aug. 9, 2018), *R&R adopted*, 2018 WL 4853041 (E.D.N.Y. Oct. 4, 2018). In light of

Troy's experience, the undersigned finds an hourly rate of $375 reasonable. *See, e.g., id; see also Fabre v. Highbury Concrete Inc.*, No. 17-CV-984 (CBA) (PK), 2018 WL 2389719, at *4 (E.D.N.Y. May 24, 2018). Aaron Schweitzer is a junior associate at Troy Law who graduated from law school in 2016 and was admitted to the bar in 2018. *Zhong Fa Qin,* 2018 WL 5456653, at *9. Given his limited experience, the undersigned finds an hourly rate of $100 reasonable. *See id.*

   *ii. Hours Billed*

   In determining a reasonable number of hours, district courts should "exclude excessive, redundant or otherwise unnecessary hours." *Quarantino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999). Counsel billed a total of 91.03 hours. (*See* Invoice, Dkt. 26-2.) Counsel submitted a contemporaneous attorney timesheet which shows that they spent multiple hours on administrative tasks such as "Create Binder, Set Up/Key in Database" (1.3 hours), "Scan and Verify ID" (10 minutes), "Set Up the Text Message, WeChat & Line" (1.4 hours), "Download Text Message Maria Calle x40" (2.00), or "File the Complaint, Summons & Civil Cover Sheet USDC" (3.5 hours). (*Id.* at 1-2.) These hours should be billed at a paralegal rate of $80. *See, e.g., CIT Bank N.A. v. Paganos*, 14-CV-3987 (CBA) (VMS), 2016 WL 3945343, at *3 (E.D.N.Y. Jul. 19, 2016) (the "prevailing rate for legal assistants ranges from $70 to $ 100"). Moreover, the time spent responding to an order to show cause (.33 minutes) should not be counted, and the hours spent drafting a proposed certificate of default (3.00 hours) and filing the "Complaint, Summons, and Civil Cover Sheet" (3.5 hours) should be reduced. (Invoice at 2-3.) Counsel billed a total of 3.85 hours for drafting a proposed default judgment (1.10 on 6/1/18 and 2.75 on 8/2/18) and a total of 9 hours for drafting Plaintiffs' Memorandum of Law (4.50 on 6/1/18 and 8/2/18). (*Id.* at 2-3.) Those hours should also be reduced. A chart showing these and other recommended modifications is attached to this Report and Recommendation. (*See* Attachment A.)

Eliminating such time resulted in 41.25 hours of compensable time for Troy at a rate of $375 an hour; 13.93 hours for Schweitzer at a rate of $100 an hour; and an additional 18.55 hours at a paralegal rate of $80 an hour.

Accordingly, the undersigned recommends a total of **$18,345.75 in attorneys' fees**.

   *iii.* *Costs*

Plaintiffs are also entitled to recover reasonable costs under the FLSA and NYLL. *See* 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1); *Perez v. Queens Boro Yang Cleaner, Inc.*, No. 14-CV-7310 (SJ) (JO), 2016 WL 1359218, at *8 (E.D.N.Y. Mar. 17, 2016), *R&R adopted*, 2016 WL 1337310 (E.D.N.Y. Apr. 5, 2016). Plaintiffs seek $982.83 in costs, including filing fees, service of process fees, and administrative and research costs. (Invoice at 4.) Counsel served Corporate Defendant twice, first by affixing copy of the Summons and the Amended Complaint to the door of Corporate Defendant's "actual place of business" (Dkt. 13), and later through the Secretary of State (Dkt. 20). Counsel provides no explanation for this duplicate service of process. Accordingly, the undersigned recommends that counsel's request of $125 for costs related to the first attempted service be denied.

The undersigned recommends an award of **$857.83 in costs**.

## **CONCLUSION**

Based on the foregoing, the undersigned respectfully recommends that Suarez Castaneda's Title VII claim be dismissed and that the Court decline to exercise supplemental jurisdiction over the remaining NYSHRL and NYCHRL claims. The undersigned further recommends that default judgment be entered against Defendants, finding them jointly and severally liable, and that Plaintiffs be awarded damages in the total sum of **$66,768.71** plus post-judgment interest as follows:

A. An award of **$16,122.15** for Suarez Castaneda, comprised of:

  (i)  **$1,121.25** in unpaid minimum and overtime wages;

  (ii)  **$1,800** for illegally retained tips;

      (iii)      **$27** for spread-of-hours premium;

      (iv)      **$2,948.25** in liquidated damages;

      (v)      **$5,000** in statutory damages for the NYLL wage notice claim;

      (vi)      **$5,000** in statutory damages for the NYLL wage statement claim;

      (vii)      **$167.17** in pre-judgment interest, plus **$0.73** per day from November 28, 2017 to the date of judgment;

      (viii)      **$58.48** for breach of contract as to cleaning supplies; and

      (ix)      **Post-judgment interest** as provided in 28 U.S.C. § 1961, to run from the date of judgment until the judgment is satisfied.

B.  An award of **$31,442.98** for Calle Alvarado, comprised of:

      (i)      **$5,688.75** for unpaid minimum and overtime wages;

      (ii)      **$4,800** for illegally retained tips;

      (iii)      $**10,488.75** in liquidated damages;

      (iv)      **$5,000** in statutory damages for the NYLL wage notice claim;

      (v)      **$5,000** in statutory damages for the NYLL wage statement claim;

      (vi)      **$445.48** in pre-judgment interest, plus **$2.59** per day between September 7, 2017 and the date of judgment;

      (vii)      **$20** for breach of contract as to cleaning supplies; and

      (viii)      **Post-judgment interest** as provided in 28 U.S.C. § 1961, to run from the date of judgment until the judgment is satisfied.

C.  An award of **$19,203.58** in attorney's fees and costs for Plaintiffs, comprised of:

      (i)      **$18,345.75** in attorneys' fees; and

      (ii)      **$857.83** in costs.

Plaintiffs are directed to serve this Report and Recommendation on Defendants forthwith and file proof of service on the docket by March 21, 2019.  Any objection to this Report must be filed in writing with the Clerk of Court within fourteen (14) days of service.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Failure to timely file any such objection waives the right to appeal the District Court's Order.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

**SO ORDERED:**

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated:    Brooklyn, New York
          March 15, 2019

32

# Attachment A

| Employee | Date | Work Description | Billable | Rate | Fees |
|----------|------|------------------|----------|------|------|
| JOHN TROY9 | 12/23/17 | Initial Telephone Conference with Plaintiff(s) | 0.30 | 375 | 112.50 |
| JOHN TROY9 | 12/28/17 | Meet with Client(s) - Intakes | 2.80 | 375 | 1,050.00 |
| JOHN TROY9 | 12/28/17 | Prepare and Sign Retainer  with Client(s) - retainer | .50 | 375 | 187.50 |
| JOHN TROY9 | 12/28/17 | Create Binder, Set Up/Key in Database | 1.30 | 80 | 104.00 |
| Aaron Schweitzer5 | 12/28/17 | Scan and Verify ID | 0.10 | 80 | 8.00 |
| Aaron Schweitzer5 | 12/28/17 | Set Up the Text Message, WeChat & Line | 1.40 | 80 | 112.00 |
| Aaron Schweitzer5 | 12/28/17 | Download Text Message Maria Calle x40 | 2.00 | 80 | 160.00 |
| JOHN TROY9 | 12/29/17 | Case Timeline: Statute of Limitations, Plaintiff(s), and Corporate Defendant(s) | 0.50 | 375 | 187.50 |
| Aaron Schweitzer5 | 12/29/17 | Download Text Message Nilda Suarez x37 | 1.55 | 80 | 124.00 |
| Aaron Schweitzer5 | 12/29/17 | Defendant Website Research: Yelp/ Grubhub/ MenuPages/ Delivery.com/ FB/web | 2.25 | 80 | 180.00 |
| JOHN TROY9 | 12/29/17 | Case Location Entry: Site Visit Preparation, Miles from Office | 0.50 | 375 | 187.50 |
| Aaron Schweitzer5 | 12/29/17 | Download Text Message Nilda Suarez and Manager Jesus x65 | 3.15 | 80 | 252.00 |
| JOHN TROY9 | 01/06/18 | Research: DMV/ Vehicle Plate Number | 0.40 | 80 | 32.00 |
| JOHN TROY9 | 01/06/18 | Research: Lexis Nexis /Legal /Others | 1.30 | 375 | 487.50 |
| JOHN TROY9 | 01/06/18 | Research: Dft Website | 0.75 | 375 | 281.25 |
| JOHN TROY9 | 01/06/18 | Research: ABC Board on Liquor Licensese | 0.40 | 80 | 32.00 |
| JOHN TROY9 | 01/06/18 | Research: Property at Addresses Known via Libor Acris PropertyShark | 0.40 | 80 | 32.00 |
| JOHN TROY9 | 01/06/18 | Research: Search Corp & Biz Entity Database | 0.50 | 80 | 40.00 |
| JOHN TROY9 | 01/06/18 | Meet with Client- Damages Calculations | 0.80 | 375 | 300.00 |
| JOHN TROY9 | 01/06/18 | Research: Property in Defendants Name via Libor Acris PropertyShark | 0.50 | 80 | 40.00 |
| JOHN TROY9 | 01/07/18 | Draft the Complaint | 5.00 | 375 | 1,875.00 |
| JOHN TROY9 | 01/07/18 | Review the Complaint | 1.10 | 375 | 412.50 |
| JOHN TROY9 | 01/07/18 | Meet with clients to revise Complaint | 1.60 | 375 | 600.00 |
| JOHN TROY9 | 01/08/18 | Finalize the Complaint, Summons & Civil Cover Sheet USDC | 1.20 | 375 | 450.00 |
| JOHN TROY9 | 01/08/18 | File the Complaint, Summons & Civil Cover Sheet USDC | .30 | 80 | 24.00 |
| JOHN TROY9 | 01/09/18 | Review Magistrate Judge Individual Practices | 0.20 | 375 | 75.00 |
| JOHN TROY9 | 01/09/18 | Review the Court Notice with AO 85 Consent to a Magistrate Judge | 0.20 | 375 | 75.00 |
| JOHN TROY9 | 01/09/18 | Review District Judge Individual Practices | 0.20 | 375 | 75.00 |
| JOHN TROY9 | 01/10/18 | Draft Damages Calculation Chart | 2.20 | 375 | 825.00 |
| JOHN TROY9 | 01/10/18 | Draft Confer Nilda RE Sex Harrassment Details | 3.00 | 375 | 1,125 |
| JOHN TROY9 | 01/12/18 | Review  Sex Harrassment Claims with Client | 1.77 | 375 | 663.75 |
| JOHN TROY9 | 01/23/18 | Review EEOC Charge with Client | 0.70 | 375 | 262.50 |
| Aaron Schweitzer5 | 01/23/18 | File EEOC Charge | 0.33 | 100 | 33.00 |
| Aaron Schweitzer5 | 01/26/18 | Organize chronological, filter by Def and witness phone number, upload and share with clients for verification | 1.25 | 100 | 125.00 |

| | | | | | |
|---|---|---|---|---|---|
| Aaron Schweitzer5 | 01/26/18 | Download CDR messages 20160725-20171224 | 0.90 | 80 | 72.00 |
| Aaron Schweitzer5 | 01/26/18 | Download CDR voice 20160725-20171224 | 0.90 | 80 | 72.00 |
| JOHN TROY9 | 02/19/18 | Verify Amended Complaint Details with Clients | 0.75 | 375 | 281.25 |
| JOHN TROY9 | 02/19/18 | Drafted first amended complaint | 1.00 | 375 | 375.00 |
| JOHN TROY9 | 02/22/18 | Prepare copies to Serve Summons & Complaint | 0.40 | 80 | 32.00 |
| JOHN TROY9 | 03/02/18 | Confer Clients RE tax reporting issue with F&R | 0.33 | 375 | 123.75 |
| JOHN TROY9 | 03/10/18 | Correspond with EEOC Staff and Request Right to Sue | 0.25 | 375 | 93.75 |
| JOHN TROY9 | 03/31/18 | Scan Right to Sue | 0.20 | 80 | 16.00 |
| JOHN TROY9 | 03/31/18 | Reciept, Review Right to Sue and File on ECF | 0.50 | 80 | 40.00 |
| JOHN TROY9 | 03/31/18 | ECF Proof of Service | 0.40 | 80 | 32.00 |
| Aaron Schweitzer5 | 03/31/18 | Review for Accuracy and Scan Proof of Service | 0.80 | 100 | 80.00 |
| Aaron Schweitzer5 | 04/06/18 | Revise Damages Calculation Chart(s) Nilda J Suarez Castaneda + Maria Calle | 1.50 | 100 | 150.00 |
| Aaron Schweitzer5 | 04/09/18 | Draft Damages Calculation Summary | 1.40 | 100 | 140.00 |
| JOHN TROY9 | 05/14/18 | Draft Certificate of Default | .30 | 375 | 112.50 |
| Aaron Schweitzer5 | 05/14/18 | Review Notice of Motion, Proposed Certificate of Default and Affirmation in Support | 0.25 | 100 | 25.00 |
| Aaron Schweitzer5 | 05/14/18 | File Notice of Motion, Proposed Certificate of Default and Affirmation in Support | 0.50 | 80 | 40.00 |
| JOHN TROY9 | 05/14/18 | Draft Notice of Motion, Certificate of Default | 0.00 | 375 | 0.00 |
| JOHN TROY9 | 05/14/18 | Draft Affirmation support Request for Default | 1.00 | 375 | 375.00 |
| JOHN TROY9 | 05/23/18 | Review Clerks affirmation for default | 0.25 | 375 | 93.75 |
| Aaron Schweitzer5 | 05/23/18 | Scan, Review for Accuracy Proof of Service | 0.25 | 100 | 25.00 |
| JOHN TROY9 | 05/30/18 | Draft Notice of Motion for Default Judgment | 0.30 | 375 | 112.50 |
| JOHN TROY9 | 05/31/18 | Draft plf Attorney Declaration support Motion for Default Judgment | 3.20 | 375 | 1,200.00 |
| JOHN TROY9 | 06/01/18 | Draft Plaintiffs Declaration support Motion for Default Judgment | 1.50 | 375 | 562.50 |
| JOHN TROY9 | 06/01/18 | Draft Proposed Default Judgment | 0.00 | 375 | 0.00 |
| JOHN TROY9 | 06/01/18 | Draft plf Memo suport Motion for Default Judgment | 0.00 | 375 | 0.00 |
| Aaron Schweitzer5 | 06/07/18 | Telephone Confer Client RE Appt for Default | 0.10 | 100 | 10.00 |
| Aaron Schweitzer5 | 06/08/18 | Verify Declaration support Motion for Default Judgment, Plf: Nilda Suarez | 1.00 | 100 | 100.00 |
| Aaron Schweitzer5 | 06/08/18 | Communicate with Clients RE Appt for Default | 0.30 | 100 | 30.00 |
| Aaron Schweitzer5 | 06/13/18 | Communicate with Clients RE Evidence for Default | 0.30 | 100 | 30.00 |
| Aaron Schweitzer5 | 07/03/18 | Communicate with Clients RE Evidence for Default | 0.30 | 100 | 30.00 |
| Aaron Schweitzer5 | 07/03/18 | Reminder Client RE Evidence for Default | 0.60 | 100 | 60.00 |
| Aaron Schweitzer5 | 07/05/18 | Inform Client of Deadline to Submit Defualt | 0.20 | 100 | 20.00 |
| Aaron Schweitzer5 | 07/16/18 | Communicate with Clients RE Appt for Default | 0.20 | 100 | 20.00 |
| Aaron Schweitzer5 | 07/17/18 | Communicate with Clients RE Appt for Default | 0.20 | 100 | 20.00 |
| Aaron Schweitzer5 | 07/17/18 | Reminder Clients RE Appt for Default | 0.20 | 100 | 20.00 |
| JOHN TROY9 | 07/20/18 | Order to Show Cause for Default | 0.00 | 375 | 0.00 |
| Aaron Schweitzer5 | 07/20/18 | Verify Declaration support Motion for Default Judgment, Plf: Maria Calle | 1.25 | 100 | 125.00 |
| Aaron Schweitzer5 | 07/21/18 | Follow Up RE Appt | 0.20 | 100 | 20.00 |

| | | | | | |
|---|---|---|---|---|---|
| Aaron Schweitzer5 | 08/02/18 | Compile Invoice in Support of Default Judgment | 0.30 | 100 | 30.00 |
| JOHN TROY9 | 08/02/18 | Draft plf Memo suport Motion for Default Judgment | 4.50 | 375 | 1,687.50 |
| JOHN TROY9 | 08/02/18 | Draft Proposed Judgment | 2.75 | 375 | 1,031.25 |
| JOHN TROY9 | 08/04/18 | Begin Research re Discrimination in Memo | 0.50 | 375 | 187.50 |
| Aaron Schweitzer5 | 08/06/18 | revise motion for default, legal research on title VII, review compl, draft title VII portion for MfDefault | 3.00 | 100 | 300.00 |
| JOHN TROY9 | 08/06/18 | File Default Motion (Complete Set) | 0.50 | 80 | 40.00 |
| | | | Total | | **$18,345.75** |